## VANDERZER, ADM'R vs. McMILLAN.

1. It is the right of the complainant to amend his bill in matter of form or substance at any stage of the cause that he may see fit; and if the effect of the amendment be to destroy the bill, the defendant must take advantage of it by demurrer, or a motion to dismiss.

2. A complainant cannot waive an answer from the defendant; but to every bill, it is the privilege of the defendant to file an answer, and to use the same as testimony, or for the purposes of a cross-bill, or any other purpose sanctioned by the usages and customs of courts of equity.

In Equity, in Elbert superior court.   Decision by Judge THOMAS, March Term, 1859.

This was a bill filed by Robert McMillan against Wm. T. VanDerzer, administrator of Ira Christian, deceased, and others.   Complainant moved to amend his bill by striking out all that part which sought a discovery from the defendants, and to·insert a waiver or disclaimer of any discovery or answer as to the charges and allegations of the bill.   Defendant objected to the amendment. The presiding judge overruled the objection and granted the motion to amend.   To which decision counsel for defendants excepted.

Vanderzer, Adm'r, vs. McMillan.

Hester &. Akerman, for plaintiff in error.

Robt. Tombs & T. R. R. Cobb, *contra.*

Judge Stephens, having been of counsel in this case, did not preside.

*By the Court.*—Lumpkin, J., delivering the opinion.

As to the right of the complainant to amend his bill, in the manner proposed, or any other, there can be no doubt, even if the necessary effect be to turn him out of court by demurrer or motion to dismiss, on the part of the defendant. A party seeks the specific performance of a contract concerning land. It does not appear from the bill itself, whether the agreement was in writing or not. Leave is asked and granted by the court to amend the bill, so as to allege, that the agreement was by parol. Can the defendant object to the allowance of the amendment because it will destroy the complainant's case? Certainly not. He must abide his time and demur to the bill as amended, or move to dismiss it for want of equity, when he is entitled to be heard. And he is the last person to object in advance to this action on the part of the complainant. We are at no loss, therefore, in affirming the judgment of the court below.

But we are requested to express our opinion upon the main question argued; and that is, whether the complainant, by waiving his claim for discovery, can prevent the answer from being used by the defendant as testimony; and not as pleading merely?

All writers on equity, assert that every bill is, in reality, a bill of discovery.—Story's Eq. Pl. § 31–311; Mitford's Eq. Pl. 53; Wigram on Discovery, 6.

In every treatise on equity pleadings, the interrogatory part is treated as an indispensable part of the bill.—Story's Eq. Pl. § 35; Adams' Eq. 59–302. The office of the sub-

pœna is to require the defendant to answer on oath, like a witness.—6 Bacon's Abr. Art. ch. (6) note (b) on page 686; Bouvier's Law, Dic. Art. Subpœna; 1 Harrison's ch. 195.

The forms of subpœna in the books require the defendant to answer.—1 Harrison's Ch. Pr. 195-6.

The equitable jurisdiction of chancery is founded on the writ of subpœna.—Adams' Equity, 36, 308, 2; Bac. Abr. 685 Ar. Court of Chancery, (6) 1 Harrison's Chancery, 14; Jacob's Law Dictionary and Bouvier's Law Dictionary, *supra*.

The invention, of this writ is complained of by the commons as a subtlety of John D. Waltham in 1415 and 1421.—Bacon, Adams and Harrison, *supra*; 3 Black. Com. 512.

Lord Chancellor Eldon, in *Evans vs. Bicknell*, 6 Ves. Jr. 174, on page 184, treats the discovery by the defendant or his right to his answer, as one of the privileges which he enjoys in a court of equity. He says: "The defendant in this court has the protection arising from his own conscience in a degree which the law does not effect to give him protection. If he positively, plainly and precisely denies the assertion, and one witness only proves it positively, clearly and precisely, as it is denied, and there is no circumstance attaching credit to the assertion overbalancing the credit due to the denial as a positive denial, a court of equity will not act upon the testimony of the witness. *Not so at law.* There the defendant is not heard. One witness proves the case; and however strongly the defendant may be inclined to deny it upon oath, there must be a recovery against him."

The learned chancellor evidently intends here to contrast the privileges of a defendant in a court of equity and a court of law. And neither here nor elsewhere, either in the Text Books or Books of Reports, do we hear anything of the doctrine now claimed; namely, the privilege of the

complainant to deprive the defendant of the advantage thus secured to him by dispensing with his answer. True, Mr. Cooper in his treatise on equity pleading, and Judge Story, in his work on the same subject, treat of the right of the complainant to waive the *oath* to the answer itself; and they discuss rather vaguely the effect of such a waiver upon the answer as testimony; and their conclusion seems to be, if I understand them correctly, that while it must be overcome by something stronger than the oath of one witness, that still the counterbalancing proof need not be quite so strong as if the answer had been sworn to. But this is not the question before us; nor does it, in our judgment help the cause of the defendant in error in the least.

In New York, a complainant is authorized by statute, to waive an answer; and when this is done, it is treated as pleading merely.—(2 Rev. Statutes, 175 § 44.) Lord Chancellor Walworth, who, whatever may be the estimate put upon him as a jurist, presided over one of the ablest equity courts in this or any other country, said of this statute that, "it introduced a new principle into the system of equity pleading."—Burras vs. Looker, 4 Paige's Ch. Rep. 227.

For myself, I am the advocate of the change. It is unreasonable and oppressive in the extreme, that a complainant who seeks no discovery from his adversary, and is forced to go into equity for no other reason but because the relief which he prays is inadequate at law, should be compelled to make a witness of the defendant, and then can get no decree against his answer, unless he can overcome it by two witnesses, or one witness and corroborating circumstances. When without this burden, one witness would be sufficient to prove his case.

Let the legislature then follow the lead of New York, and enact that whenever the answer of the defendant is waived it shall count as pleading only. And more than

Vanderzer, Adm'r, vs. McMillan.

this, I beg and entreat the General Assembly to say in a few lines, that the jury *at law* may mould their verdict as in equity, to meet the exigencies of the case.

Having ascertained what the rule is in England, is there anything in our legislation which repeals it, either directly or by necessary implication? We know of nothing. On the contrary, the inferences are all the other way. It is admitted that until within a few years past the practice has been in accordance with the English rule. And that even now, the innovation is limited to a few circuits. No power, short of the Legislature, should inaugurate a change like this.

As early as 1792, in defining the powers of the superior courts, it was declared, that they should have authority to hear and determine by a jury of twelve men, all pleas, civil and criminal, and all causes of what nature or kind soever, according to the usages and custom of courts of law and equity.—Watkins' Digest, 481. What the usages and custom of the chancery courts of England have been, we have already seen. And the same idea is distinctly kept up from that day to this, viz, that whenever parties sue at law, they accommodate their proceedings to the usages and custom of the common law courts. When they sue by bill they adopt the forms of a court of equity.

Passing over the long space which intervenes, we propose to examine briefly, some of the provisions in the act of 1857, (Pamphlet, p. 106,) to alter and amend the practice in courts of equity in this State; a statute that has been overlooked in this discussion. The third section dispenses with the filing of a replication. The fourth provides that at the first term of the court, the defendant *may* plead, answer or demur. The fifth enacts, that defendant, if in his judgment he has an equitable defense, shall not be forced or obliged to file a cross-bill, but may set up such equitable defense in his answer, and pray for and obtain such relief as he may be entitled to upon the

Vanderzer, Adm'r, vs. McMillan.

principles of justice in as full and ample a manner as he would now be entitled to under the cross-bill. And may, if he desires it in writing in his answer, compel an answer from plaintiff at such time and upon such terms as the court may order and direct.

Thus it will be seen, that in addition to the protection afforded to the defendant by his answer as testimony, the further important privilege is extended to him of converting his answer into a cross-bill. Can the complainant, by waiving his answer, deprive him of this right? Could he take from him the benfit of his answer as evidence to entitle him to move to dissolve an injunction? And what power has the court to limit or restrict the defendant's right by prescribing a rule upon the subject? The sixth section of this act entitles either party to examine the other by commission or on the stand, notwithstanding the answer of the defendant may be filed. Knowing how often the truth is evaded by an order skillfully drawn, the Legislature have afforded this method for sifting the conscience of the defendant; still, it has not seen fit to grant to the complainant the power to deprive him altogether of the privilege of answering upon oath.

By the seventh section, the right is guaranteed to plaintiffs to amend at any time; and the co-relative right to defendants to answer such amendment within a reasonable time.

By the eighth section, which is the last I shall notice, it is declared that defendants shall only be required when an amendment is made, to answer such amendment; and if the amendment is mere formal, *the answer may be waived* and the cause proceed. This is the first and only place in our law, where this expression occurs. And it confers upon the plaintiff the right to waive an answer to a formal amendment merely. Before this relaxation, the privilege of answering was unrestricted even in cases of formal amendments. Now it may be waived in all such amend-

ments, but none others. And the right to answer all substantial allegations, whether in original or amended bills, remains as it has existed heretofore.

I think the conclusion is irresistible that all of our legislation, respecting equity-causes, is based upon the assumption, that it is the privilege of defendants to answer all causes in equity, whether the bill be for discovery only, or for relief only, or for both. And to use their answer when filed, not only as evidence, but as a cross-bill, or for any other purpose authorized and sanctioned by the usages and custom of courts of chancery.

Judgment reversed.